UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARION E. WATTS,

        Petitioner,

v.                                        Case No. 3:14-cv-558-J-39MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

### I. Status

      Petitioner Marion E. Watts, an inmate of the Florida penal system proceeding pro se, challenges his 2009 state court (Duval County) conviction for aggravated battery (no weapon). See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1). Watts also filed an Appendix (Pet. App.) (Doc. 2) and a Memorandum of Law (Pet. Memo.) (Doc. 3). Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 16), with exhibits in support thereof (Resp. Ex.)[1]. Watts filed a Reply to Respondent's Response (Reply) (Doc. 22).

### II. Procedural History

      By amended information, the State charged Watts in count one with aggravated battery upon Kevin Miller with a firearm and in count two with possession of a firearm by a juvenile delinquent found to have committed a felony act. Resp. Ex. 2. Trial proceedings

---

[1] The Court will refer to specific pages within a lettered exhibit by their bates-stamped number at the bottom of the page where available. Otherwise, the Court will refer to the page number of the document.

on count one commenced and concluded on April 28, 2009.  Resp. Ex. 4.  The jury returned a verdict of guilty of aggravated battery with a finding that Watts did not actually possess a firearm during the commission of the offense.  Resp. Ex. 6.[2]  Watts filed a motion for new trial which was denied at sentencing on June 3, 2009.  Resp. Exs. 7, 8.  The court sentenced Watts to fifteen years incarceration with credit for 621 days time served.  Resp. Ex. 9.

Watts appealed to the First District Court of Appeal (First DCA).  Resp. Ex. 10.  Through counsel, Watts filed an initial brief in the appellate court (Resp. Ex. 11), the State filed an answer brief (Resp. Ex. 12), and Watts filed a reply brief (Resp. Ex. 13).  Without written opinion, the First DCA per curiam affirmed Watts' judgment of conviction and sentence on August 11, 2010.  Resp. Ex. 14.  Watts v. State, 41 So. 3d 900 (Fla. 1st DCA 2010) (table).

Watts filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Resp. Ex. 17.  The State filed a response thereto.  Resp. Ex. 18.  Attaching the State's response, the circuit court summarily denied Watts' Rule 3.850 motion without evidentiary hearing, noting that "the record conclusively establishes that the Defendant is not entitled to the relief requested."  Resp. Ex. 19.

Watts appealed the denial of his Rule 3.850 motion to the First DCA (Resp. Ex. 20), and filed a pro se initial brief.  Resp. Ex. 21.  The State filed notice that it would not file an answer brief.  Resp. Ex. 22.  The First DCA per curiam affirmed the summary denial

---

[2] Consequently, a written judgment of acquittal on count two of the amended information was rendered on April 28, 2009.  Resp. Ex. 6.

of postconviction relief (Resp. Ex. 23), and denied Watts' pro se motion for rehearing without comment.  Resp. Ex. 24.

Watts filed a pro se state petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel on direct appeal of his judgment of conviction and sentence.  Resp. Ex. 15.  The First DCA denied per curiam Watts' petition "on the merits" but without discussion.  Resp. Ex. 16; Watts v. State, 51 So. 3d 609 (Fla. 1st DCA 2010).

Watts filed a pro se postconviction motion in the state circuit court pursuant to Rule 3.800(a) (Resp. Ex. 25), which the court summarily denied (Resp. Ex. 26).  Watts appealed (Resp. Ex. 27), and filed a pro se initial brief (Resp. Ex. 28).  The First DCA per curiam affirmed the denial of postconviction relief without opinion.  Resp. Ex. 29; Watts v. State, 132 So. 3d 230 (Fla. 1st DCA 2014) (table).

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

# IV. **Cognizability, Exhaustion and Procedural Default**

## A. **Cognizability**

Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citations omitted). As such, federal habeas "does not lie for errors of state law." Id. at 67 (quotations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68. As such, federal courts may not review claims based exclusively on state law issues even if the claims are "couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quotation omitted).

## B. **Exhaustion**

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). As the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at

365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

The petitioner must present the claim to the state courts as a federal, constitutional claim rather than as a matter of state law. See Duncan, 513 U.S. at 365-66; French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11th Cir. 2015), cert. denied, 136 S. Ct. 815 (2016); Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 456-59 (11th Cir. 2015); Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1352 (11th Cir. 2012); McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). To do so, a petitioner could include "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or [ ] simply label[ ] the claim 'federal.'" Baldwin, 541 U.S. at 32. But raising a state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan, 513 U.S. at 366. Likewise, merely citing to the federal constitution is insufficient to exhaust a claim in state court. Anderson v. Harless, 459 U.S. 4, 7 (1983); see also McNair, 416 F.3d at 1302 ("'The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)). As explained by the Eleventh Circuit:

> To "fairly present" a claim, the petitioner is not required to cite "book and verse on the federal constitution." Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (quotation omitted). Nevertheless, a petitioner does not "fairly present" a claim to the state court "if that court must

> read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32, 124 S.Ct. 1347. In other words, "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir.2007) (quoting Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir.1998)) (concluding that the petitioner's claims were raised where the petitioner had provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

Lucas, 682 F.3d at 1352. "The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."

Preston, 785 F.3d at 457 (11th Cir. 2015); see also French, 790 F.3d at 1270-71. To do so, petitioners must "present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation." Kelley, 377 F.3d at 1344-45 (citing Picard, 404 U.S. at 277).

> It is not sufficient merely that the federal habeas petitioner has been through the state courts, Picard v. Connor, 404 U.S. 270, 275-76, 92 S. Ct. 509, 512, 30 L.Ed.2 438 (1971), nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made, Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted). The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim." Picard, 404 U.S. at 277, 92 S. Ct. at 513 (alteration in original).

Id. at 1344. "In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice." Id. Thus,

> [f]ederal habeas petitioners are undoubtedly on their strongest footing with regard to the exhaustion requirement when their federal claims are carbon copies of the claims they presented to the state courts. Such reproduction leaves no question that the claims presented to the federal court are the same as those that were presented to the state court. But we do not demand exact replicas. We recognize that habeas petitioners are permitted to clarify the arguments presented to the state courts on federal collateral review provided that those arguments remain unchanged in substance.

Id.

## C. Procedural Default and Exceptions

"[W]hen 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile," the failure also constitutes a procedural bar. Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quotation omitted); see also McNair, 416 F.3d at 1305 (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)); see also Boerckel, 526 U.S. at 848; Vazquez v. Sec'y, Fla. Dep't of Corr., 827 F.3d 964, 966 (11th Cir. 2016). Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."). Federal habeas review is typically precluded. Pope, 680 F.3d at 1284; Smith, 256 F.3d at 1138. Nevertheless, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).

"To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court."[3]  <u>Id.</u> (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'"  <u>Id.</u> (quoting <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish a fundamental miscarriage of justice.  <u>Ward</u>, 592 F.3d at 1157.  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense."  <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert. denied</u>, 535 U.S. 926 (2002).  Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial."  <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324).  With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected.  <u>Schlup</u>, 513 U.S. at 324.

---

[3] Ineffective assistance of counsel may constitute cause to excuse a procedural default. <u>Carrier</u>, 477 U.S. at 488.  However, the petitioner must first exhaust his ineffective assistance claim by presenting it to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim.  <u>Id.</u> at 488; <u>see also</u> <u>Henry v. Warden, Ga. Diag. Prison</u>, 750 F.3d 1226, 1230 (11th Cir. 2014); <u>see also</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000)).  Also, the claim of ineffective assistance of counsel must have merit.  <u>See</u> <u>Brown v. United States</u>, 720 F.3d 1316, 1333 (11th Cir. 2013) (quotation omitted).

# V. __Standard of Review__

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus.  See 28.U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits.  See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, Wilson v. Sellers, -- S. Ct. --, 2017 WL 737820 (Feb. 27, 2017) (No. 16-6855); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).  Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, -- U.S. --, 133 S. Ct. 1088, 1096 (2013).[4]  Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits.  See Richter, 562 U.S. at 100; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

---

[4] The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Williams, 133 S. Ct. at 1096-97.  However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances." Williams, 133 S. Ct. at 1096.

If the claim was "adjudicated on the merits" in state court, Section 2254(d) bars relitigation of the claim, subject only to the exceptions in §§ 2254(d)(1) and (d)(2). Richter, 562 U.S. at 98. As the Eleventh Circuit explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S.Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ——, ——, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ——, ——, 135 S.Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[5] Titlow, 571 U.S. at ——, 134 S.Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

---

[5]The Eleventh Circuit has previously described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016); see also Landers, 776 F.3d at 1294 n.4; Cave v. Sec'y, Dep't of Corr., 638 F.3d 739, 744-47 & n.4, 6 (11th Cir. 2011); Jones, 540 F.3d at 1288 n.5.

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016); <u>see also</u> <u>Daniel v. Comm'r, Ala.</u> <u>Dep't of Corr.</u>, 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under Section 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011) (regarding § 2254(d)(1)); <u>Landers v. Warden, Att'y Gen. of Ala.</u>, 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" <u>Wilson</u>, 834 F.3d at 1235 (quoting <u>Richter</u>, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>see also</u> <u>Wilson</u>, 834 F.3d at 1235; <u>Marshall</u>, 828 F.3d at 1285. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. <u>Wilson</u>, 834 F.3d at 1239; <u>see also</u> <u>Butts v. GDCP Warden</u>, 850 F.3d 1201, 1204 (11th Cir. 2017). However, in <u>Wilson</u>, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court. [6] 834 F.3d at 1239. As such,

_____

[6] Although the Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in <u>Wilson</u> remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it. <u>Butts</u>, 850 F.3d at 1205, n.2.

even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico [v. Lett, 449 U.S. 766, 733 (2010)] (quoting [Woodford v. Visciotti, 537 U.S. 19, 24 (2002)]), and presume that it "follow[ed] the law," [Woods v. Donald, --- U.S. ---, 135 U.S. 1372, 1376 (2015)] (quoting Visciotti, 537 U.S. at 24).

Id. at 1238; see also Williams, 133 S. Ct. at 1101 (Scalia, J., concurring).

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 134 S. Ct. at 16 (2013). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Richter, 562 U.S. at 102; see also Tharpe, 834 F.3d at 1338 ("Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'") (quoting Richter, 562 U.S. at 102-03). "If this standard is difficult to meet, that is because it was meant to be." Richter, 562 U.S. at 102.

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that

counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

Richter, 562 U.S. at 104.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Finally, "the standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance." Daniel, 822 F.3d at 1262. "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's

performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); cf. Tharpe, 834 F.3d at 1338-39 (explaining that a federal court may grant relief only if counsel's representation fell below Strickland's highly deferential standard of objectively reasonable performance and the state court's contrary decision would be untenable to any fairminded jurist).

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

Watts asserts that the trial court violated his fundamental right to a full and fair trial by departing from neutrality when the trial judge repeatedly threatened the recalcitrant victim/witness (Kevin Miller) with jail time if he kept lying and playing games during his testimony. Petition at 5; Pet. Memo. at 2-3; see also Resp. Ex. 4 at 38-39, 94, 109. He also contends that the trial judge both insisted that Miller explain why he could not remember certain details and asserted that Miller had committed perjury. Petition at 5; Pet. Memo. at 2-3; see also Resp. Ex. 4 at 38-39, 94, 109. Through counsel, Watts raised

the facts underlying this claim as issue two of his direct appeal. Resp. Ex. 11 at 16-18. However, Watts presented the claim solely as an issue of state law and failed to fairly present the claim as a federal constitutional claim.[7] Nowhere did he label his claim "federal," cite the federal source of law on which he relied, or cite a case deciding such a claim on federal grounds. See Baldwin, 541 U.S. at 32. He did nothing to put the state court on notice that he intended to raise a federal claim. See Preston, 785 F.3d at 457; French, 790 F.3d at 1270-71. To fairly present a federal claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson, 459 U.S. at 6-7 (citations omitted); see also Duncan, 513 U.S. at 366; Lucas, 682 F.3d at 1352; McNair, 416 F.3d at 1303. As such, the Court agrees with Respondents that the claim is unexhausted and procedurally defaulted. See Response at 16-20. Watts has not established cause and prejudice for the procedural default or a fundamental miscarriage of justice.[8] See Ward, 592 F.3d at 1157. As such, this Court may not grant relief on his claim. See 28 U.S.C. §2254(b). Ground one is denied.

---

[7] Subsequently, in his petition alleging ineffective assistance of appellate counsel filed in the First DCA, Watts asserted that his appellate counsel was ineffective for failing to argue this issue as a federal constitutional issue of due process under the Fourteenth Amendment to the U.S. Constitution. Resp. Ex. 15 at 19, 21-22.

[8] Although Watts exhausted a claim that appellate counsel was ineffective for failing to argue a federal constitutional violation on his direct appeal, see Resp. Ex. 15 at 19-23, the First DCA rejected his claim on the merits, see Resp. Ex. 16, and the Court agrees. See Brown, 720 F.3d at 1335. Thus, even if Watts attempted to excuse his procedural default by claiming that his appellate attorney was ineffective, see Henry, 350 F.3d at 1230, he would not be able to establish cause and prejudice. See Carrier, 477 U.S. at 492 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial."); Brown, 720 F.3d at 1335.

## B. Ground Two

Watts asserts that his trial counsel provided ineffective assistance by failing to exclude or limit testimony of an uncharged collateral crime or bad character. Petition at 7. He contends that his trial counsel failed to object based on Florida Statute § 90.403 to evidence of an uncharged murder, conspiracy to commit a retaliation murder, and unproven gang activity. Id. In Petitioner's Memorandum, he articulates in detail his allegation that counsel performed deficiently when counsel failed to object to:

1. State's characterization of appellant as a man whose "code of justice" is about revenge and retribution;
2. State's characterization of defendant's neighborhood as governed by that code of revenge and retribution;
3. State's unsupported claims of defendant's gang activities.
4. State making separate, uncharged murder and subsequent conspiracy to commit murder a feature of the trial.

Id. at 7. He also contends that counsel failed to move the court for a cautionary jury instruction to limit the use of collateral evidence. Id.

Watts raised a partially similar, but less comprehensive, claim as ground one of his motion for postconviction relief under Rule 3.850 in state court. Resp. Ex. 17 at 8-9. In his state postconviction motion, Watts asserted that counsel was ineffective for failing to object to testimony on the basis that the danger of unfair prejudice substantially outweighed the probative value under Fla. Stat. § 90.403. However, Watts complained only about counsel's failure "to move to exclude or limit testimony concerning the State's theory of motive that the defendant hit Kevin Miller in the face with a handgun because he was angry at Miller for refusing to participate in violent revenge, or murder, against the person(s) who killed Chilean Gadson." Resp. Ex. 17 at 3. Watts repeatedly referred to the testimony he sought to exclude as the "Gadson-Revenge line of testimony" or simply

"Gadson-Revenge line." Id. at 4, 6, 8-11. Thus, Watts exhausted this claim only to the extent of challenging the specific factual claim that counsel failed to move to exclude or limit the "Gadson-Revenge line of testimony" under Fla. Stat. § 90.403.

The state circuit court denied Watts' motion, finding that "the record conclusively establishes that the Defendant is not entitled to the relief requested" and attaching the State's Response. Resp. Ex. 19. Watts appealed to the First District Court of Appeal, where he expanded the arguments beyond that which he raised in his motion. Resp. Ex. 21 at 4. Without written opinion, the First DCA affirmed per curiam the circuit court's summary denial of relief. Resp. Ex. 23.

Although Watts attempts now to claim that counsel committed additional errors beyond failing to exclude the "Gadson-Revenge line of testimony," the additional allegations of deficient performance were not presented to the state circuit court in the motion for postconviction relief.[9] See Kelley, 377 F.3d at 1344-45 (petitioners must "present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation"). As such, they are unexhausted and procedurally defaulted. Watts has not shown cause and prejudice or a

---

[9] Watts seeks to add allegations that counsel performed deficiently by failing to object to the State's characterization of him and his neighborhood as being governed by a "code of justice" involving revenge and retribution, the State's unsupported claims of his gang activities, and the State's feature of the separate, uncharged murder and subsequent conspiracy to commit murder. Pet. Memo. at 3. He also seeks to fault counsel for failing to move the court for a cautionary jury instruction to limit the use of collateral evidence. Id. While Watts' motion for postconviction relief arguably included some of these allegations, they were not asserted as grounds for relief but rather as support for the claim on which he did seek relief. See Resp. Ex. 17 at 3 (referring to the prosecutor's opening statement), 5 (referring to the redirect examination of Kevin Miller, where the prosecutor referred to a "click," a "group," and "Jitterbugs"), 5-7 (referring to the prosecutors' closing statements). Watts cannot now add new claims that he failed to exhaust in state court.

fundamental miscarriage of justice to excuse the default.  See Ward, 592 F.3d at 1157. This Court may not grant relief on this claim to the extent it relies on the unexhausted foundations.  See 28 U.S.C. §2254(b).

With respect to Watts' exhausted claim that counsel was ineffective for failing to exclude the "Gadson-Revenge line of testimony," the Court presumes that the First DCA's per curiam affirmance without written opinion was on the merits.  See Williams, -- U.S. at --, 133 S. Ct. at 1096; Richter, 562 U.S. at 99.  As such, the Court applies AEDPA deference in reviewing Watts' claim.  See Richter, 562 U.S. at 99.  To determine which theories could have supported the First DCA's decision, the Court may look to the state trial court's previous opinion as an example of a reasonable application of law or determination of fact.  Wilson, 834 F.3d at 1239; see also Butts, 850 F.3d 1204.  The state circuit court's decision to deny Watts' claim because the record conclusively established that the Defendant was not entitled to the relief requested is not contrary to or an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state circuit court.  See 28 U.S.C. § 2254(d).

The record reflects that the day before trial, Watts' counsel sought to exclude potential testimony from Detective Rhatigan, a homicide detective, because the testimony would be beyond the scope of the trial and its prejudice would outweigh any probative value.  See Resp. Ex. 3 at 4 ("any testimony that that detective may give is beyond the scope of this trial"); id. at 6 ("it's beyond the scope of the trial, and it's prejudicial to my client.  Once the jury hears anything about a homicide investigation, all bets are out, out

the window."). The State argued that the testimony was relevant to the State's theory of motive and proffered:

> It's the State's position that this was – and certainly it's supported by what I believe will be the victim's testimony on the stand – that the defendant was – said that a friend of his had been murdered, refused to cooperate with the police, and sought the victim's help to commit a revenge killing. When the victim refused to, that's when this incident occurred. [The detective] would simply testify that the guy is, in fact, dead, there is an open homicide investigation, Marion Watts allegedly witnessed the event, and refused to cooperate with the Jacksonville Sheriff's Office in their investigation.

Resp. Ex. 3 at 5. The court ruled that calling the detective to testify that Watts was interviewed but did not cooperate in a homicide investigation would be prejudicial. Id. at 7. The court agreed that the prejudice from such testimony would outweigh any probative value during the State's case in chief. Id. at 6-7. The court left open the possibility that the State could revisit the admissibility of the testimony during rebuttal or a later point in the trial if the testimony became relevant. Id. at 7-8. The State never called Detective Rhatigan, and the issue of the detective's testimony never arose again.

At trial the next day, the State called the victim, Kevin Miller, as its first witness. Resp. Ex. 4 at 27. As soon as the State asked Miller what happened to Chilean Gadson, counsel immediately objected, and the court overruled the objection. Id. When the State's next question was whether Miller ever had a discussion with Watts about Chilean Gadson being murdered, counsel objected again. Id. The court overruled the objection, and granted a standing objection to the entire line of questioning. Id. As the State continued its direct examination of Miller, Miller's equivocal and sometimes contrary answers prompted the State to impeach him with his prior deposition testimony (id. at 31-

34; 37) and ask to lead the witness as a hostile witness (<u>id.</u> at 39), which the court granted after emphasizing the importance of the oath to Miller. <u>Id.</u> at 38-39.

Having been overruled when he objected to testimony regarding Chilean Gadson, counsel proceeded to cross-examine Miller regarding the Gadson-Revenge theory of motive that the State had advanced. <u>Id.</u> at 70. On cross-examination, Miller testified that he did not know and that Watts had never told him who killed Gadson. <u>Id.</u> He testified that he knew that Gadson and Watts were friends because he had seen them together. <u>Id.</u> He testified that Watts wanted his help regarding the person who possibly killed Gadson, but that Watts never indicated exactly what the help was and never told Miller he wanted him to kill those who had killed Gadson. <u>Id.</u> at 70-71.

The state circuit court concluded that the record conclusively established that Watts was not entitled to the relief requested. Resp. Ex. 19. By citing and attaching the State's Response (Resp. Ex. 18), the state circuit court apparently accepted at least one of the State's arguments. In sum, the State had argued that counsel was not ineffective because he made appropriate objections and because the evidence was admissible as both relevant to motive and inextricably intertwined. <u>Id.</u> at 2-6. As such, the State argued that Watts had failed to carry his burden and show a prima facie case for relief. <u>Id.</u> at 6. The state circuit court's reliance on the State's arguments was neither contrary to nor an unreasonable application of <u>Strickland</u>, and did not result from an unreasonable determination of the facts. Ground two is denied.

### C. <u>Grounds Three Through Seven</u>

#### 1. <u>General</u>

In grounds three, four, five, six and seven, Watts asserts five claims premised on ineffective assistance of counsel. Petition at 8-15; Pet. Memo. at 12-27. Watts exhausted all five of these claims by raising them in his state motion for postconviction relief. Resp. Ex. 17 at 12-40. The state circuit court generally denied all claims in Watts' motion, finding that "the record conclusively establishes that the Defendant is not entitled to the relief requested" and attaching the State's Response. Resp. Ex. 19. Watts appealed to the First DCA. Resp. Ex. 21 at 7-11. Without written opinion, the First DCA affirmed per curiam the circuit court's summary denial of relief. Resp. Ex. 23.

The Court presumes that the First DCA's per curiam affirmance without written opinion was on the merits. <u>See</u> <u>Williams</u>, -- U.S. at --, 133 S. Ct. at 1096; <u>Richter</u>, 562 U.S. at 99. As such, the Court applies AEDPA deference in reviewing Watts' claim. <u>See</u> <u>Richter</u>, 562 U.S. at 99. To determine which theories could have supported the First DCA's decision, the Court may look to the state trial court's previous opinion as an example of a reasonable application of law or determination of fact. <u>Wilson</u>, 834 F.3d at 1239; <u>see also</u> <u>Butts</u>, 850 F.3d 1204. As discussed below, the state circuit court's decision to deny Watts' claims because the record conclusively established that Watts was not entitled to the relief requested is not contrary to or an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state circuit court. <u>See</u> 28 U.S.C. § 2254(d). Thus, the claims in grounds three, four, five, six and seven will be denied.

### 2. **Ground Three**

Watts asserts that his counsel provided ineffective assistance by failing to exclude testimony of uncharged threats, specifically, "recanted hearsay testimony about phone threats made to the victim." Petition at 8; Pet. Memo at 12-17. The state circuit court concluded that the record conclusively established that Watts was not entitled to the relief requested. Resp. Ex. 19. By citing and attaching the State's Response (Resp. Ex. 18), the state circuit court apparently accepted the State's theory that counsel's lack of objection to Officer Muchowicz's testimony did not constitute deficient performance because the testimony was properly admitted as prior inconsistent statements. See id. at 6-7. Additionally, Kevin Miller testified on direct examination that he thought the voice was Watts. Resp. Ex. 4 at 54. Because any objection would have been meritless, counsel is not ineffective for failing to lodge a meritless objection.

In addition, although the prosecutors misstated in their closing arguments that two phone calls occurred rather than one, see id. at 218, 254, the State argued that the court's instructions that the attorneys' statements are not evidence (see id. at 7, 208) mitigated the impact of the misstatement. See Resp. Ex. 18 at 6-7. The state court's reliance on the State's argument that Watts had failed to carry his burden and show a prima facie case for relief was neither contrary to nor an unreasonable application of Strickland, and it did not result from an unreasonable determination of the facts. Ground three is denied.

### 3. **Ground Four**

Watts asserts that counsel provided ineffective assistance by failing to exclude impeachment testimony from Officer Muchowicz. He contends that his counsel "failed to invoke 403 protections to exclude impeachment testimony from Ofc. Muchowicz on

collateral bad acts where identification was recanted before trial, the 'victim' admitted no actual threat was spoken, and no identification existed."  Petition at 10; Pet. Memo at 17-20.

The record reflects that counsel objected based on improper impeachment.  <u>See</u> Resp. Ex. 4 at 176.  Originally, the trial court sustained the objection, <u>see</u> <u>id</u>; however, after a sidebar conference, the court ruled that proper impeachment would include the identity of the caller and the substance of the threat to the victim because Miller never admitted who called him and never admitted that the call was an actual threat.  <u>Id.</u> at 176-78.  Nevertheless, counsel objected again during additional questioning of the witness regarding the identity of the caller and the substance of the threat.  <u>Id.</u> at 179.  After inquiring whether counsel was renewing his prior objection, the court again overruled the objection.  <u>Id.</u>  The State recounted these facts from the record in its brief and asserted that Watts was incorrect in his allegation that his counsel failed to object to the impeachment testimony.  Resp. Ex. 18 at 8-9.

Attaching the State's brief, the state circuit court concluded that the record conclusively established that Watts was not entitled to the relief requested and attached the State's brief.  Resp. Ex. 19.  As such, the state circuit court apparently accepted the State's argument that Watts incorrectly alleged that his counsel failed to object and that he had failed to show a prima facie for relief.  <u>See</u> Resp. Ex. 18 at 8-9.  The state court's reliance on the State's theory that Watts had failed to carry his burden and show a prima facie case for relief was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not result from an unreasonable determination of the facts.  Ground Four is denied.

**4. <u>Ground Five</u>**

Watts asserts that his counsel provided ineffective assistance by failing "to move to limit the scope of Officer Muchowicz's impeachment testimony, allowing the State to prejudicially feature unsubstantiated allegations of murder and conspiracy to commit murder, flight to avoid arrest, witness tampering threats, etc." Petition at 12; <u>see also</u> Pet. Memo. at 20. Specifically, Watts contends that Officer Muchowicz "was used to tell the jury many factors beyond the scope of impeachment, like: unsubstantiated threats to kill the victim, defendant's flight from police to avoid arrest, two separate phone threats, officers' special instruction on how to stay safe from defendant, etc." Pet. Memo at 20.

The record reflects that Officer Muchowicz testified that he responded to Miller's complaint to the police of receiving a threatening phone call. Resp. Ex. 4 at 172.[10] When Muchowicz began to testify about what Miller told him about his police complaint, defense counsel objected twice. <u>Id.</u> at 176. The court sustained defense counsel's first objection as nonresponsive as well as another objection for hearsay, cumulative, best evidence and improper impeachment. <u>Id.</u> The prosecutor then asked to approach the bench for a sidebar conference. The court initially explained that the only proper impeachment would be identification of the caller and any other questions would elicit hearsay. <u>Id.</u> at 176-77. The prosecutor then persuaded the court that Miller also denied or at least equivocated on direct examination that the caller threatened to kill him. <u>Id.</u> at 177-78. Thus, the court permitted the prosecutor to re-ask the question, and shortly thereafter, defense counsel renewed his objection. <u>Id.</u> at 178-79. As allowed by the court, the prosecutor continued

---

[10] Defense counsel objected based on bolstering, which the court sustained. Resp. Ex. 4 at 172. Then when Muchowicz described Miller's appearance, defense counsel objected based on speculation, which the court overruled. <u>Id.</u> at 174-75.

with questions regarding the identity and substance of the phone call, and defense counsel objected as leading, which the court overruled. Id. at 179-80. The prosecutor then asked, "What was the exact threat, and nothing more than that?" Id. at 180. Muchowicz answered, "The threat was that, because Mr. Miller had sustained a broken jaw from Mr. Watts, and had then had a subsequent police report written, he said that Mr. Watts had called him and threatened to kill him if he testified against him." Id. That concluded the testimony that was allowed in as impeachment by prior inconsistent statements of Miller.

The remainder of Muchowicz's testimony on direct examination pertained to the reports he wrote, a return visit to Miller at Miller's request, the routing of his reports within the police department, the involvement of another officer, and his visit to Watts' grandmother's house. Id. at 180-85. Following up on Miller's complaint, he testified that he went to Watts' grandmother's house, but that Watts was not there, so he told Watts' grandmother that there was a warrant for her grandson's arrest and that it would be best if she convinced him to turn himself in rather than be caught by police. Id. at 184-85. None of this testimony was impeachment by prior inconsistent statements or hearsay.[11] Although theoretically counsel could have objected that the prejudicial impact of such testimony outweighed the probative value, counsel could have strategically decided not to object because of the likelihood of being overruled combined with drawing attention to

---

[11] In fact, the one time the prosecutor asked whether Miller gave Muchowicz a phone number associated with the caller identification, defense counsel objected based on hearsay, and the court sustained the objection. Id. at 181.

the testimony, or for other reasons.  See Strickland, 466 U.S. at 689; Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc).

The State asserted in its brief that "the remainder of Officer Muchowicz's testimony did not elicit testimony about what Kevin Miller told him about the telephone call and was otherwise proper testimony."  Resp. Ex. 18 at 9-11.[12]  The State argued that Watts had not carried his burden and made a prima facie case for relief under Strickland.  The state circuit court attached the State's brief and concluded that the record conclusively established that Watts was not entitled to the relief requested.[13]  Resp. Ex. 19.

The Court applies double deference to the state court's adjudication regarding counsel's performance.  See Daniel, 822 F.3d at 1262 (citing Richter, 562 U.S. at 105); Evans, 703 F.3d at 1333-35 (Jordan, J., concurring); cf. Tharpe, 834 F.3d at 1338-39. Defense counsel made numerous objections attempting – and sometimes succeeding – to limit Muchowicz's testimony.  Any objections counsel failed to make would likely not have succeeded, and in any event, counsel may strategically decide such matters.  See Strickland, 466 U.S. at 689.  The state court's reliance on the State's assertion that Watts had failed to carry his burden and show a prima facie case for relief was neither contrary

_____

[12] The State also asserted that testimony regarding Watts' evasion of prosecution demonstrated a consciousness of guilt.  Id.

[13] To the extent Watts now claims that his claim was not adequately addressed (Petition at 12; Pet. Memo. at 21), the claim fails.  He asserted in his Rule 3.850 motion that his counsel "failed to move to limit officer Muchowicz's testimony when it prejudicially exceeded its limited purpose."  Resp. Ex. 17 at 21.  The state circuit court attached the State's brief, in which counsel's attempts to limit impeachment were detailed in grounds three and four.  See Resp. Ex. 18 at 8-11.  In his appeal of the Rule 3.850 denial, he reiterated his claims.  See Resp. Ex. 21 at 14-15.  The First DCA affirmed the summary denial of his motion.  Resp. Ex. 23.  The Court gives the last state court to adjudicate the prisoner's claim on the merits the benefit of the doubt and presumes that it followed the law.  Wilson, 834 F.3d at 1238.

to nor an unreasonable application of <u>Strickland</u>, and it did not result from an unreasonable determination of the facts. Ground five is denied.

### 5. <u>Ground Six</u>

Watts asserts that his counsel provided ineffective assistance by failing to request jury instructions limiting the consideration of testimony to impeachment and prohibiting its use as substantive evidence of guilt. Petition at 13. He contends that "[t]his was paramount because this failure to limit allowed the state to allude that identity of Petitioner as the attacker was proven by that collateral, hearsay, recanted evidence." <u>Id.</u>

The state circuit court concluded that the record conclusively established that Watts was not entitled to the relief requested. Resp. Ex. 19. By citing and attaching the State's Response (Resp. Ex. 18), the state circuit court apparently accepted the State's argument that even if counsel had requested a limiting or cautionary jury instruction, Watts would not have been entitled to such an instruction. <u>See</u> Response at 68; Resp. Ex. 18 at 11-12. The state court's reliance on the State's argument that Watts had failed to carry his burden and show a prima facie case for relief was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not result from an unreasonable determination of the facts. Ground six is denied.

### 6. <u>Ground Seven</u>

Watts contends that his counsel was ineffective for failing to make an adequate motion for judgment of acquittal based on circumstantial evidence, where the State's case could not refute the hypothesis of innocence, that Watts was merely present, and that no one could identify him as the assailant. Petition at 14; Pet. Memo. at 25-27. In his Reply, he asserts that he suffered prejudice. Reply at 4.

The state circuit court concluded that the record conclusively established that Watts was not entitled to the relief requested. Resp. Ex. 19. By citing and attaching the State's Response (Resp. Ex. 18), the state circuit court apparently accepted the State's argument that Watts failed to carry his burden and show a prima facie case of ineffective assistance of counsel because competent and substantial evidence supported the trial court's denial of the judgment of acquittal, and thus, Watts could not show that a better judgment of acquittal would have been granted. Resp. Ex. 18 at 16. The state court's conclusion that Watts had failed to carry his burden and show a prima facie case for ineffective assistance of counsel was neither contrary to nor an unreasonable application of Strickland, and it did not result from an unreasonable determination of the facts. Ground seven is denied.

**D. Ground Eight**

Watts contends that "his sentence was unconstitutionally imposed" for three reasons, which the Court will designate as sub-claims: (1) "he was denied his constitutional right to be heard;" (2) "his written sentence admittedly does not comport with the orally imposed sentence;" and (3) "the court relied on improper sentencing factors." Petition at 15; Pet. Memo. at 28. In his Reply, he asserts that he was "denied due process of law guaranteed by the 14th Amendment of the [United States] Constitution." Id. at 4.

Except for his assertion that "the sentence was unconstitutionally imposed," the three sub-claims presented are substantially the same as the three separate grounds Watts presented to the state circuit court in his Rule 3.800(a) motion to correct illegal sentence. Resp. Ex. 25. By written opinion, the state circuit court denied relief on the

grounds with which it was presented.  Resp. Ex. 26.  Watts appealed to the First DCA

and filed an initial brief.  Resp. Exs. 27, 28.  Without opinion, the Florida First DCA

affirmed per curiam the circuit court's summary denial of relief. Resp. Ex. 29.

## 1.  **Sub-claim One**

At sentencing, Watts called three witnesses to testify as mitigation.  Resp. Ex. 8 at

126-154.  After the third witness's testimony, the following exchange ensued:

> THE COURT:  Thank you.  Anything else?  Mr. Bateh, any further witnesses?
>
> MR. BATEH [defense counsel]:  One second, Your Honor, I'm sorry.
>
> (Counsel conferring with client.)
>
> MR. BATEH:  Your Honor, I believe that all we have at this point in time is just argument, and review of the PSI.

Id. at 154.  Subsequently, when asked whether the defense had any corrections or

objections to the presentence investigation report, defense counsel replied:

> MR. BATEH:  Just a couple, Your Honor.  They are more esthetic than anything.  On page 2, the last paragraph, where it says defendant statements, that was actually misconstrued.  The defendant stated that he did not want to – did not have any comments to the Court.  He stated that it's not that he didn't have any comments to the Court, he wanted to reserve for sentencing.

Id. at 155-56.  The court continued to hear argument from the State and defense counsel

before pronouncing sentence.  Id. at 34-43.  Following pronouncement of sentence, the

transcript reflects:

> THE DEFENDANT:  Your Honor –

| MR. URRA [prosecutor]: | Your Honor, we do have the entry to the pleas to the second count. |
|---|---|
| THE COURT: | I don't think that's going to be a good idea. I think we need to bring him back tomorrow for that. |
| THE DEFENDANT: | Your Honor – |
| MR. URRA: | Yes, ma'am. |

Id. at 43.

On direct appeal, Watts failed to raise any issue alleging a failure to allocute. Resp. Ex. 11. However, in his Rule 3.800 motion, Watts asserted that "the court imposed an unlawful sentence when no opportunity to be heard at his sentencing was afforded him." Resp. Ex. 25 at 1. He further contended that "[t]he court never asked if he wanted to be heard, nor advised him of his constitutional right to be heard." Id. at 2. He cited Johnson v. State, 873 So. 2d 558 (Fla. 1st DCA 2004), Florida Rule of Criminal Procedure 3.720(b), and United States v. Medina, 90 F.3d 49 (11th Cir. 1996)[14], for the proposition that "a trial court's failure to address defendant personally during sentencing, or failure to give an opportunity to make a statement requires resentencing." Id. at 3. He concluded by stating that "[w]here the record shows the defendant asked to comment at sentencing, but no opportunity was provided by the court, and by counsel's own admission, relevant facts were available, as a matter of constitutional due process, resentencing should ensue." Id.

The state circuit court denied relief as follows:

---

[14] Superseded by statute on other grounds as stated in Brown v. United States, 720 F.3d 1316, 1334 (11th Cir. 2013).

> The Defendant alleges that he was not permitted to address the Court at the time of his sentencing. Hence, he claims, his sentence was entered illegally. However, "sentencing procedures are generally not a subject for review under Rule 3.880(a)." <u>Guilford v. State</u>, 88 So. 3d 998, 999 (Fla. 2d DCA 2012). No relief is warranted.

Resp. Ex. 26. On appeal, Watts asserted, inter alia, that the court's "failure to provide [Watts] an opportunity to be heard in his sentencing is not just 'procedural error' but substantive error and denial of a 14th Amendment constitutional right to be heard." Resp. Ex. 28 at 2. The First DCA affirmed the circuit court's decision.

Respondents assert that Watts failed to fairly present his claim as a federal, constitutional claim before the state courts and that consequently, his claim is unexhausted and procedurally defaulted.[15] Response at 80-84. The Court agrees with Respondents contention that Watts' reliance on <u>Johnson</u>, Rule 3.720(b), and <u>Medina</u> are all insufficient to raise a federal, constitutional claim, as those authorities rely only on state and federal rules of criminal procedure. However, Respondents fail to address whether Watts' references to "his constitutional right to be heard" Resp. Ex. 25 at 2, and "as a matter of constitutional due process," <u>id.</u> at 3, were sufficient to fairly present the issue to the state circuit court or whether the references were mere needles in a haystack. Likewise, Respondents fail to address any effect of Watts' claims on appeal. <u>See</u> Resp. Ex. 28.

Regardless, Watts is not entitled to relief.

> The Supreme Court has not recognized a constitutional right to allocution. <u>McGautha v. California</u>, 402 U.S. 183, 218 n. 22, 91 S. Ct. 1454, 28 L.Ed.2d 711 (1971) ("This Court has

---

[15] Respondents assume arguendo that Watts' claim presents an issue of federal constitutional law. Response at 82.

not directly determined whether or to what extent the concept of due process of law requires that a criminal defendant wishing to present evidence or argument presumably relevant to the issues involved in sentencing should be permitted to do so."), judgment vacated on other grounds by Crampton v. Ohio, 408 U.S. 941, 92 S. Ct. 2873, 33 L.Ed.2d 765 (1972). See also Hill v. United States, 368 U.S. 424, 429, 82 S. Ct. 468, 7 L.Ed.2d 417 (1962) (leaving open the question of a defendant's right to allocution). Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). See also Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L.Ed.2d 187 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."); Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Because the right of allocution is not a constitutional right guaranteed by due process, it is not a cognizable claim in a federal habeas petition. See, e.g., United States v. Fleming, 849 F.2d 568, 569 (11th Cir.1988) (citations omitted) ("[T]he right to allocution is not constitutional."); Scrivener v. Tansy, 68 F.3d 1234, 1240 (10th Cir.1995) ("A trial court's failure to afford a defendant the right of allocution raises neither a jurisdictional nor a constitutional error cognizable in habeas.").

Troy v. Sec'y of Dep't of Corr., No. 8:11-CV-796-T30-AEP, 2013 WL 24212, at *25 (M.D. Fla. Jan. 2, 2013), aff'd sub nom. Troy v. Sec'y, Florida Dep't of Corr., 763 F.3d 1305 (11th Cir. 2014). Thus even assuming the claim was exhausted, Watts cannot show that the state court's denial of relief on this ground was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.[16] See 28 U.S.C. §2254(d)(1). In addition, absent a constitutional basis,

---

[16] Watts' reliance in his Reply on Green v. United States, 365 U.S. 301 (1961) and Rock v. Arkansas, 483 U.S. 44 (1987) is misplaced. See Reply at 5-6. Green involved a federal defendant's right to allocute under the Federal Rules of Criminal Procedure. Id. at 303,

his claim would not be cognizable in federal habeas court.  <u>See</u> <u>McGuire</u>, 502 U.S. at 67; <u>Branan</u>, 861 F.2d at 1508.  The sub-claim is denied.

## 2.  <u>Sub-claim Two</u>

Watts claims that because his written sentence does not comport with the orally imposed sentence, his sentence was unconstitutionally imposed.  Petition at 15.  He elaborates that the "oral pronouncement of aggravated battery without a weapon is not reflected in the written judgment of aggravated battery with a deadly weapon or firearm."  Pet. Memo at 28.  In his Rule 3.800 motion, Watts asserted that the "written judgment does not comport with the jury's verdict."  Resp. Ex. 25 at 3.  He asserted and the state circuit court denied relief based solely on state law grounds for relief.  <u>Id.</u> at 3-4.

As Watts failed to present a federal claim for relief to the state court, the Court agrees with Respondents that the claim is unexhausted and procedurally defaulted.  <u>See</u> Response at 78-80; 85-86; <u>Baldwin</u>, 541 U.S. at 32; <u>Duncan</u>, 513 U.S. at 366; <u>Preston</u>, 785 F.3d at 457; <u>French</u>, 790 F.3d at 1270-71; <u>Lucas</u>, 682 F.3d at 1352; <u>McNair</u>, 416 F.3d at 1303.  The Court also agrees with Respondents that Watts' claim is not cognizable in federal habeas because it is based on perceived errors of state law.  <u>See</u> <u>id.</u> at 78-80; 86-87; <u>McGuire</u>, 502 U.S. at 67 (federal habeas "does not lie for errors of state law"); <u>Branan</u>, 861 F.2d at 1508.  The sub-claim is denied.

## 3.  <u>Subclaim Three</u>

Watts asserts that his sentence was unconstitutionally imposed because the court relied on improper sentencing factors, including nonexistent priors and points not

---

n.1; <u>see also</u> <u>Hill v. United States</u>, 368 U.S. 424 (1962).  <u>Rock</u> involved a defendant's right to testify on one's own behalf at a criminal trial.  <u>Id.</u> at 51-53.

determined by the jury.  Petition at 15; Pet. Memo. at 28.  In his Rule 3.800 motion, Watts contended that the "trial court imposed an unlawful sentence when it relied on improper sentencing factors, and failed to consider other proper/cognizable facts that were available."  Resp. Ex. 25 at 4.  Over the course of three pages, Watts relied on state law grounds for relief.  Id. at 4-6.  Only once does Watts ambiguously mention the phrase "constitutional right," and it is insufficient to alert the state court that he intended to raise a federal, constitutional claim.  See id. at 6 ("The Defendant has a constitutional right to be sentenced using a correctly calculated scoresheet."); McNair, 416 F.3d at 1302 ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (quotation omitted).  Again, he asserted and the state circuit court denied relief based solely on state law grounds for relief.  Id. at 4-6.

As Watts failed to present a federal claim for relief to the state court, the Court agrees with Respondents that the claim is unexhausted and procedurally defaulted.[17] See Response at 78-80; 87-89; Baldwin, 541 U.S. at 32; Duncan, 513 U.S. at 366; Preston, 785 F.3d at 457; French, 790 F.3d at 1270-71; Lucas, 682 F.3d at 1352; McNair, 416 F.3d at 1303.  The sub-claim is denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

---

[17] Respondents assume arguendo that Watts' claim presents an issue of federal constitutional law.  Response at 87.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[18]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of May, 2017.

_____

BRIAN J. DAVIS
United States District Judge

lc22
c:  Marion Watts #J39083
    Counsel of Record

---

[18] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.